UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY E. CLARK

          Plaintiff,

v.                                  Case No.: 8:10-cv-2098-EAK-TGW

FLORIDA RURAL LETTER
CARRIERS ASSOCIATION, and
JOHN E. POTTER,
Postmaster General, U.S. Postal Service,

          Defendants.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court on Defendant United States Postal Service's Motion for Summary Judgment and Incorporated Memorandum of Law, filed on March 7, 2013, Defendant Florida Rural Letter Carriers' Association's Motion for Summary Judgment and Supporting Memorandum of Law, filed on March 8, 2013, and Plaintiff's Response in Opposition to Motion for Summary Judgment filed on March 19, 2013. After review of the motions, record and applicable law, for the reasons stated below, the Defendants' Motions are GRANTED.

## STANDARD OF REVIEW

Rule 56 states that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  The movant party bears the burden of showing the court that no dispute as to any material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Disputes of material fact are genuine only when a reasonable

jury could return a verdict for the nonmoving party. First Nat. Bank of Az. V. Cities Service Co., 391 U.S. 253, 289 (1968). Further, a plaintiff cannot rely on mere allegations of a conspiracy to get to a jury without showing any evidence supporting that claim. Id. at 290.

The evidence must be viewed in favor of the nonmoving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962). If the nonmoving party fails to make enough of a showing to establish an essential element of their case, and that is essential to prove at trial, summary judgment is appropriate. Marcelin v. Eckerd Corp. of Florida, Inc., 2006 WL 923745 (M.D. Fla. Apr. 10, 2006).

## BACKGROUND

On September 21, 2010, Plaintiff filed a complaint in which he alleges violations of 42 U.S.C. § 1981 ("§ 1981 Claim") and § 301-Hybrid claims of the Labor Management Relations Act, 1947 § 301(a), 29 U.S.C. § 185(a) the Taft-Hartley Act ("§ 301-Hybrid Claim") by USPS and FRLCA. Dkt. 1. Plaintiff alleges that he was discriminated against because of his race. Except when noted, the factual background was taken from the Joint Pretrial Statement and the two Motions for Summary Judgment. Dkt. 41, 46, 47.

Plaintiff is a black male who began working for the United States Postal Service ("USPS") as a rural letter carrier in 1993 until his removal on May 15, 2009. Dkt. 47, Ex. 2. Rural carriers are paid in a different manner than urban letter carriers. Rural carriers are paid by the amount and type of mail they deliver and the time required to process the mail. Dkt. 47, Ex. 6. The rate of pay is determined by the amount of mail for each route during a mail count period. A higher volume of mail means a higher rate of

pay. Dkt. 47, Ex. 6. Mail count is conducted every year in accordance with the National Agreement that binds the USPS and the Florida Rural Letter Carrier's Association ("FRLCA"). Dkt. 41, Ex. 6. The carriers are also credited for amount of time used in the office. Completing Change of Address ("COA") cards and other forms during a mail count adds additional office time to each route.

The National Rural Letter Carrier's Association ("NRLCA") and the USPS have a National Agreement that dictates the terms and conditions of employment for rural carriers ("National Agreement"). Article 15 of the National Agreement governs the grievance and arbitration procedures to which employees are entitled. Dkt. 41, Ex. 6. It is a multi-step process during which the FRLCA and the USPS efficiently and expeditiously negotiate grievances that could culminate in arbitration. Article 16 governs the discipline procedures. Dkt. 47, Ex. E.

USPS conducted a mail count from February through March of 2009. In the weeks leading up to the mail count, USPS held a meeting in which management told all carriers to clean their mailboxes and to proceed with business as usual for the duration of the process. Dkt. 41, Ex. 7. Plaintiff attended these meetings. Dkt. 41, Ex. 7. Plaintiff worked during the mail count in February of 2009. Plaintiff's direct supervisor conducted an investigation after being concerned with the high COA forms processed by the Plaintiff. The supervisor ran a report for every rural carrier who had more than ten COA forms submitted during the mail count, and came to the conclusion that the Plaintiff was manipulating the mail count. Dkt. 47. On March 19, 2009, the USPS put Plaintiff on emergency placement, off-duty status without pay. On April 1, 2009, the USPS issued

Plaintiff a Notice of Removal terminating him from his position effective May 15, 2009. Dkt. 41, Ex. 3.

Plaintiff was represented by FRLCA through the third step of the grievance process. FRLCA appealed every removal grievance that USPS denied and conducted multiple reviews of the Plaintiff's case. Dkt. 47. After step three of the process, the union determined that the grievance did not have a high likelihood of success, and the FRLCA chose not to continue into arbitration.

On September 21, 2013, Plaintiff filed a Complaint with this Court against USPS and FRLCA[1]. Defendants USPS and FRLCA separately filed Motions for Summary Judgment on March 7, 2010 and March 8, 2013 respectively. Dkt. 41, 46. This Court issued an Order on October 8, 2013 allowing the Plaintiff an opportunity to present evidence to support his claims before the case was dismissed.

## DISCUSSION

Plaintiff has alleged claims of race discrimination, breach of contract and failure of adequate representation under 42 U.S.C. § 1981 ("§ 1981 Claim") and § 301-Hybrid Claims of the Labor Management Relations Act, 1947 § 301(a), 29 U.S.C. § 185(a) the Taft-Hartley Act ("§ 301-Hybrid Claim") by USPS and FRLCA. Because claims under § 1981 and Title VII involve the same analysis, and because the Plaintiff alleges a hybrid claim that requires joint analysis of USPS and FRLCA, the Court will address the two motions for summary judgment together.

---

[1] This Court ordered the FRLCA to show cause as to why it should not be sanctioned for waiting over a year to tell the Court that the proper party is not the FRLCA, but the NRLCA. Dkt. 63. The National Union will not be joined and no sanctions will be entered.

## I.      § 301-Hybrid Claim Analysis

The federal labor laws were put in place by congress to improve the wages and working conditions of employees by applying a system of organization and interest for individuals as a whole. Vaca v. Sipes, 386 U.S. 171, 182 (1967). This duty was developed in a series of cases that involved racial discrimination by unions against the employees they were supposed to protect. See Steele v. Louisville & N.R. Co., 323 U.S. 192 (1944). Unions have a statutory obligation to represent all members of a designated unit without hostility or discrimination toward any individual member, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. Vaca, 386 U.S. at 177.

Such a suit as brought by plaintiff, triggers two causes of action. The suit against the employer is dealt with under § 301, because the employee is alleging a breach in the collective bargaining agreement. DelCostello v. Int'l Broth. Of Teamsters, 462 U.S. 151, 164 (1983). The suit against the union is examined under the Taft-Hartley Act, because the employee is alleging breach of duty of fair representation. Vaca, 386 U.S. at 184. There is an intricate relationship between the duty of fair representation and the enforcement of collective bargaining contracts. Id. The two claims are so interdependent that to prevail against either the company or the union, the plaintiff must prove that the company breached the contract and demonstrate the breach of duty by the union. United Parcel Service, Inc. v. Mitchell, 451 US 56, 66-67 (1983). Furthermore, the employee must successfully prove both aspects of the claim to prevail against either the employer or the union, regardless of whether the employee sues one or both parties. DelCostello, 462 U.S. at 164.

### a.  FRLCA's Duty of Fair Representation

The Plaintiff's claim against FRLCA[2] cannot withstand summary judgment because FRLCA did not breach its duty of fair representation by failing to take Plaintiff's grievance to arbitration.  A breach of fair representation occurs when the "union's conduct toward a specific member is arbitrary, discriminatory or in bad faith." Vaca, 386 U.S. at 190.  A union's actions are arbitrary only if they are "so far outside a 'wide range of reasonableness' as to be irrational," and to prove that the union's actions were discriminatory, the discrimination must be invidious.  Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953); Freeman v. O'Neal Steel, 609 F.2d 1123, 1128 (5th Cir. 1980). Discrimination is invidious if it involved race or another constitutionally protected category, or if it arises from a form of prejudice.  Breininger v. Sheet Metal Workers Int'l. Ass'n Local Union No. 6, 493 U.S. 67, 80 (1989).   To establish bad faith in regards to a duty of fair representation, the Plaintiff must show evidence of "fraud, deceitful action or dishonest conduct."  Amalgamated Ass'n of St., Elc. Ry. and Motor Coach Emp. Of America v. Lockridge, 403 U.S. 274, 299 (1971).  Courts have given unions a wide range of discretion to administer and make decisions on behalf of its members. Vaca, 386 U.S. at 191.  Furthermore, employees have no absolute right to have a grievance taken to arbitration.  Id.; Castelli v. Douglas, 752 F.2d 1480, 1482 (9th Cir. 1985).  If unions were required to go through with this process regardless of the merits of the claim, this settlement instrument would be undermined and it would lessen confidence between the union and the employer.  Vaca, 386 U.S. at 194 It would also

---

[2] The Court will assume that FRLCA had a duty even though the NRLCA is the proper party.

diminish the effectiveness of the process, increase the cost of the grievance process and would overload the settlement process substantially.  Id.

There are several cases that illustrate this point.  The United States Supreme Court decided in Vaca that the union did not breach its duty of fair representation by failing to take the matter to arbitration and dismissing the plaintiff's grievances.  Vaca, 386 U.S. at 194.  The Court concluded that the union processed the grievance through four steps and attempted to gather evidence to prove the plaintiff's case.  Id.  However, because these efforts were fruitless, the union made the administrative decision to dismiss the case and not go forward with the arbitration.  Id.  Because there was no evidence in the record that any specific union officer was personally hostile toward the plaintiff, and there was no evidence that the union at any point acted in any manner other than in good faith, the Court concluded that the union did not breach the duty of fair representation.   In Castelli, the Ninth Circuit decided that there was no breach of the duty of fair representation even though the union representatives spent no more than a few hours investigating an employee's grievances.  752 F.2d at 1483.  The Eleventh Circuit held in McCollum v. Bolger that the union did not need to pursue a sex discrimination matter merely because the employee wished the union to do so absent proof that the union refused to represent the employee due to bad faith or hostility.  794 F.2d 602, 612 (11th Cir. 1986).  Lastly, the Fifth Circuit decided in Turner v. Air Transp. Dispatchers' Ass'n, that the union did not breach its duty of representation by not proceeding with arbitration because the union officials listened to the plaintiff's argument and it was discussed before being turned down.  468 F.2d 297, 299 (5th Cir. 1972).

7

Turning to the case at hand, the Plaintiff alleges that FRLCA did not arbitrate his grievances because of his race.  Article 15 of the National Agreement specifies a four-step grievance process and arbitration procedure.  The first step delegates responsibility to initiate any grievance procedure regarding disciplinary matters within fourteen days after learning of the cause.  Dkt. 47, Ex. E.  The subsequent steps allow FRLCA and USPS to collect evidence relating to the matter.  Dkt. 47, Ex. E.  It gives the parties an opportunity to process the claim and attempt to resolve it amicably.  The last step of this process involves a final and binding arbitration.  Dkt. 47, Ex. E.  Although there is no right for an employee to have a grievance heard, FRLCA is required to request arbitrations in cases that FRLCA seeks to arbitrate. The Director of Labor Relations and the General Counsel review the grievance, and if they find that the claim is not likely to succeed in arbitration, the case is withdrawn.  Dkt. 47, Ex. E.

The Plaintiff was removed from his position on April 1, 2009 and he submitted the grievance form on April 17, 2009.  Although the filing of his grievance was outside of the fourteen day time period allotted in the National Agreement, FRLCA and USPS reviewed his case and did not find an amicable solution to the Plaintiff's cause.  FRLCA filed grievance appeals as part of step two and step three of the grievance process[3].  The Plaintiff's grievance was reviewed by several individuals from FRLCA including Grievance Specialist, Debbie Williams; Labor Relation Specialists; the Director of Labor Relations, Joey Johnson; and General Counsel for Union, Michael Gan and Mark Gisler. These individuals came to the conclusion that the Plaintiff's grievance would be difficult

---

[3] There are discrepancies in the record regarding the dates the grievance appeals were filed.  However, these discrepancies do not affect the analysis of the claim for there is record that the grievance process did take place and the Union followed the proper process dictated by Article 15 of the National Agreement.

to prosecute in arbitration. Dkt. 47, Ex. G, F. They were concerned that the filling of the grievance was outside the fourteen-day window. Most importantly, they were troubled by the COA cards submitted during the mail count as compared to the relatively small number during the previous year. Dkt. 47, Ex. G. This, as Mr. Gan stated in his Declaration, was "particularly serious" because the increase in the COA cards meant an increase in the Plaintiff's salary. Dkt. 47, Ex. F. They indicated that the Plaintiff could not provide a credible or substantive explanation for either of these matters, so the request for arbitration should be withdrawn. Dkt. 47, Ex. F. FRLCA gave the Plaintiff an opportunity to submit additional information to help persuade FRLCA to pursue the case again. A fresh look at the Plaintiff's file and the new documents provided did not persuade FRLCA to reopen the grievance claim.

Additionally, three declarations of the union employees that reviewed the Plaintiff's grievance claim state that the denial of the claim was not based on race. Dkt. 47, Ex. G, F, L. They even indicated that, at the time of the review, they had never met the Plaintiff and the decision was entirely based on the likelihood of success at arbitration. Dkt. 47, Ex. G, F, L.

Plaintiff has provided no evidence as to his claim that FRLCA breached its duty of fair representation. There is sufficient evidence that a trier of fact could reasonably find the issue in favor of the Defendant. This Court concludes that the actions of FRLCA were not arbitrary, discriminatory, or in bad faith. FRLCA took the Plaintiff's grievance claim, reviewed the case and took the necessary appeal steps before deciding not to go through with the arbitration. FRLCA even gave the Plaintiff a second opportunity to provide additional information to take into consideration for review of his case. There is

no documentation to substantiate the claim that their decision was discriminatory, deceitful or dishonest in nature, or that FRLCA acted with intent to defraud. FRLCA records demonstrate careful analysis and consideration to the efficacy of arbitration. Therefore, this Court finds that the actions were not unreasonable and finds no basis to show FRLCA was not acting in good faith. This Court concludes that there is no issue of material fact relating to this part of the claim and the Plaintiff's claim fails as a matter of law.

The Plaintiff's allegations, that FRLCA breached its duty of fair representation by (1) not inviting him to attend meetings between the USPS and FRLCA, (2) not allowing him to present evidence and (3) not meeting with the Plaintiff, also fail because FRLCA's actions were within the wide range of discretion given to it by the law. As discussed above, unions are given a wide range of reasonableness to administer their grievance process, and only a reckless disregard for the employee's rights will be sufficient to establish claims. See Vaca, 386 U.S. at 171; Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206 (11th Cir. 1982). It must be shown that FRLCA ignored the grievance, gave it little attention or failed to take a necessary step in the process. Id. However, it is not essential that the grievant be present and a part of FRLCA's decision to pursue the case. Id., Freeman v. O'Neil Steel, 609 F.2d at 1127. Even poor judgment or negligent acts by the union to keep the grievant informed on the status of his claim is not sufficient to support a claim of unfair representation. Whitten v. Anchor Motor Freight, Inc., 521 F.2d 1335, 1341 (6th Cir. 1975).

Plaintiff has failed to present evidence that FRLCA disregarded his rights or ignored his grievance. As discussed above, FRLCA conducted an investigation and

pursued the grievance through to step three of the process. The undisputed facts presented in the Joint Pretrial Statement show that the Plaintiff spoke with Union stewards about his grievance. Dkt. 47. He gave FRLCA a detailed account of his case as well as three handwritten statements, 12, 7 and 9 pages long respectively. Dkt. 47. FRLCA further gave the Plaintiff an opportunity to submit more evidence to support his claim when his grievance was denied a third time. Lastly, the National Agreement dictates, in Article 15.3 Step 1(d), that the FRLCA representative and the USPS installation head meet expeditiously to develop the grievance facts and file in order to attempt to reach a resolution. Dkt. 47, Ex. E. It does not mandate that the grievant must be present during these procedures.

After careful review of the record, this Court finds that FRLCA adequately investigated the Plaintiff's grievance and weighed all the relevant factors before choosing to dismiss the case. Because FRLCA gave the Plaintiff several opportunities to tell his side of the events orally and verbally, and FRLCA was not required to have the Plaintiff present at the meetings, FRLCA did not breach their duty of fair representation.

Because the Plaintiff failed to establish a breach of the duty of fair representation by FRLCA, the § 301-Hybrid Claim fails.

### b. USPS's Breach of Contract

As discussed above, to succeed in a § 301-Hybrid Claim, the Plaintiff must also prove that USPS breached the National Agreement with FRLCA. Because the Plaintiff's claim fails as a matter of law under the first prong of § 301-Hybrid Claim, the claim for breach of contract against USPS does not need to be addressed. However, for the purposes of this discussion, this Court will assume that the Plaintiff prevailed on the first

part of the claim and he must now establish the breach of the National Agreement by USPS.

USPS did not breach the National Agreement because USPS dismissed the plaintiff on a just cause basis. In order to establish a proper claim against USPS, the plaintiff must prove that the discharge was contrary to the contract or that USPS discharged the plaintiff on either arbitrary or discriminatory grounds. See Mitchell, 451 U.S. 57; Rodriguez v. Seamans, 463 F.2d 837, 843 (D.C. Cir. 1972). The plaintiff must show that he suffered an adverse job action by USPS and that the adverse job action was "without just cause." Farrow v. Henderson, 195 F. Supp. 2d 1320, 1328 (M.D. Fla. 2001). The plaintiff in Mitchell was discharged for dishonest acts and requested his union to file a grievance. 451 U.S. at 59. He brought a § 301-Hybrid Claim against the employer for firing him in order to replace full-time employees, like himself, with part-time ones. Id. The United States Supreme Court held it was not enough for the plaintiff to prove that his discharge was contrary to the contract, but he must also prove that the union breached its duty of fair representation. Id. at 74. In Rodriguez, the D.C. Circuit held the plaintiff's dismissal for falsifying documents would stand because the plaintiff failed to prove he was dismissed on either arbitrary or discriminatory grounds. 463 F.2d at 839. Absent such facts, the removal must stand. Id. The court also held that it had no power to review penalties where the action for dismissal was justified. Id. 842. The court conceded that the "truthfulness of a man is material in estimating his reliability." Id. (quoting Harrison v. McNamara, 228 F.Supp. 406, 408 (D.Conn., 1964)). The court in Farrow granted summary judgment against a plaintiff who sued a union and USPS, after the latter dismissed him for giving false testimony in a worker's compensation hearing.

Farrow, 195 F. Supp. 2d at 1324. The court did not do an in-depth analysis on the claim against the employer because the claim against the union failed. Id. at 1328. However, the court did state that the plaintiff had to prove that he suffered an adverse job action and that it was without just case. Id.

In the present case, Article 16 of the National Agreement dictates the scope under which an employee can be discharged from his job. Dkt. 47. The USPS can discipline an employee where there is just cause including, but not limited to, incompetence, failure to perform work as requested or failure to observe safety regulations. Dkt. 41, Ex. 6. The rural mail count was conducted from February to March of 2009. USPS conducted a Pre-Count Conference for the carriers on January 27, 2009 where the carriers, Plaintiff included, were informed and instructed on how to conduct their business while the mail count was taking place. Dkt. 41, Ex. 8. During the meeting, the carriers were instructed to clean all mailboxes and to process any and all COA forms as they normally would throughout the year. Dkt. 41, Ex. 8. For each form completed, the rural carrier would record and get paid two minutes of office time. The carriers were told not to hold any COA forms back until the count started because USPS wanted a clear evaluation of each route. Dkt. 41, Ex. 8.

The record indicates that during the mail count, the Plaintiff submitted sixty COA forms for Route 8. Dk. 41, Ex. 9-10. However, the number of COA forms filed by Plaintiff was drastically lower the previous years, with a total of five generated in 2008. Dkt. 41, Ex. 10. The record further shows that Plaintiff submitted a total of twenty-five COA forms within the first week of the mail count. Dkt. 47, Ex. K. Plaintiff's direct supervisor, Melissa Peterson, grew suspicious about the large number of forms submitted

and conducted an investigation. Dkt. 41, Ex. 4. Peterson ran a report of every route with ten or more COA forms and concluded that every route had similar COA forms as the previous year, except for Route 8. Dkt. 41, Ex. 4. Investigative interviews were conducted during which the Plaintiff admitted that, contrary to procedure, he submitted COA forms for residents whose forward mail request had expired. Dkt. 41, Ex. 13. Plaintiff admitted in his deposition that he submitted several COA forms for individual members when the correct procedure is to fill one out per household. Dkt. 41, Ex. 11. USPS understood this evidence to mean that Plaintiff changed his method of work so that he could be credited and paid two minutes per each COA form submitted. Dkt. 41, Ex. 3.

Plaintiff submits no evidence for a trier-of-fact to find an issue exists on this matter. As stated in the Investigative Records and FRLCA grievance records, Plaintiff offers no explanation for his actions. Plaintiff was given his notice of termination on April 1, 2009. Dkt. 41, Ex. 3. In the letter, USPS emphasized the importance of relying on their employees' truthful and honest work. Dkt. 41, Ex. 3. The letter communicates that this improper conduct was a breach of the employee's responsibilities and they have lost confidence in the effectiveness of Plaintiff's work. USPS concluded the letter by saying that trust is necessary for an employer/employee relationship. Dkt. 41. Ex. 3.

There is evidence to support that USPS was justified in terminating Plaintiff in accordance with the National Agreement. Plaintiff's actions fall within Article 16's scope of terminating employees for incompetence or failure to perform work as requested. Dkt. 41, Ex. 6. Plaintiff's actions suggest he was taking advantage of the mail count to get a salary increase. There is no issue of material fact that USPS' actions were neither arbitrary or without just cause.

The Plaintiff failed to show that there is a genuine issue of material fact sufficient to allow a fact-finder to evaluate a § 301-Hybrid Claim.   Therefore, the defendants are entitled to judgment as a matter of law.

## II.     42 U.S.C. § 1981 Claim Analysis

Plaintiff contends in his Complaint that FRLCA and USPS failed to address the Plaintiff's grievances because of Plaintiff's race, and that it treated white employees in similar situations more favorably than him. Dkt. 1.   Plaintiff alleges a violation of 42 U.S.C. § 1981.   Section 1981(a) gives all persons of the United States, in every State and territory "full and equal benefit of all laws and proceedings . . . enjoyed by white citizens . . . " Subsection (c) states that the rights given in this section are to protect against injury by "nongovernmental discrimination and impairment under color of state law." 42 U.S.C. § 1981.   A claim brought under § 1981 requires the Plaintiff to belong to a racial minority, that the defendant intended to discriminate on basis of race, and that the discrimination involved an act protected by § 1981.   Cook v. Randolph Co., Ga., 573 F.3d 1143, 1157 (11th Cir. 2009).

USPS is a federal organization, therefore, it is not eligible for review under this statute and an opinion on this matter is not appropriate.   However, the Court will later review this claim under Title VII of the Civil Rights Act of 1964, which gives remedy for discrimination claims in the scope of federal employment.   Brown v. General Services Admin., 425 U.S. 820 (1976); Williams v. Bentsen, 1993 WL 469110 at 1 (D.C. Cir. 1993).   Both Title VII and § 1981 claims for racial discrimination require proof of intentional discrimination.   The facts sufficient for a Title VII claims are also sufficient

for a § 1981 claim and the same standards apply.  Jurado v. Eleven-Fifty Corp, 813 F.2d

1406, 1412 (9th Cir. 1987).

Plaintiff's § 1981 claim against FRLCA cannot prevail because Plaintiff failed to

establish a *prima facie* case. In order to prevail a § 1981 claim against FRLCA, the

plaintiff must show that the employer violated the collective bargaining agreement, that

the union failed to challenge the violation in breach of duty of fair representation, and

that the union acted with discriminatory intent.  Gilmore v. National Postal Mail Handlers

Union, 2012 U.S. Dist. LEXIS 91128, at 4 (M.D. Fla. 2012).  For a claim that bears the

critical question of discrimination, the plaintiff must show that similarly situated

employees, not a part of the protected group, were treated differently.  McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 793 (1973).   This framework allows plaintiffs to

prove their case when they do not have "explicit, inculpatory evidence of discriminatory

intent."  Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996) (citing Hutson v.

McDonnel Douglas Corp., 63 F.3d 771, 776 (8th Cir. 1995)).   Plaintiff must show that

his employer treated similarly situated employees, outside of the protected class, more

favorably than themselves.  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

The establishment of a *prima facie* case creates a presumption of discrimination

against the employee.  Chapman v. Al Transport, 229 F.3d 1012, 1025 (11th Cir. 2000).

If plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to

articulate a legitimate non-discriminatory reason for their actions.  McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 802 (1973).  If the defendant can articulate reasons for

their actions, the presumption of discrimination is eliminated and the plaintiff must show

sufficient evidence to allow a reasonable fact-finder to refute the employer's reasons.

Chapman, 229 F.3d at 1025. If the plaintiff does not offer such evidence, then the employer is awarded summary judgment. Id. When deciding a motion for summary judgment, the court must determine whether plaintiff has cast sufficient doubt on the defendant's non-discriminatory intent such that a reasonable fact-finder could conclude the employer's reasons were a mere pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).

Courts across the nation take into account the delicate and comprehensive task of creating a *prima facie* case for race discrimination. The Eleventh Circuit in Holifield granted summary judgment for the employer after plaintiff could show no evidence of racial bias. 115 F.3d at 1561. An African-American doctor sued his former employer for race discrimination. Id. Plaintiff was terminated from his job and in his claim, pointed to two other doctors who were treated more favorably than he was, by being transferred to another institution instead of terminating their employment. Id. at 1563. The court found that Holifield failed to produce sufficient affirmative evidence to establish similarly situated persons or that their conduct was as similar and serious as the conduct for which he was discharged. Id. The court further found that the plaintiff had not presented direct evidence, but relied solely on statistical and circumstantial evidence that was not specifically relevant to his claim. Id. Lastly, the court stated that conclusory assertions, in absence of evidence, are insufficient to withstand summary judgment. Id. at 1566.

The Eight Circuit held that the employee did not establish a *prima facie* case of race discrimination even though she provided names of other people she alleged were treated differently. Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996).

Plaintiff brought action against her employer under Title VII and § 1981 with claims of discriminatory intent, stating the company had never had a black female supervisor. Id. She provided twenty-seven names of white workers who became supervisors after she was eligible. The court held that the claims were unsupported because the plaintiff referred to the individuals without many details or reference to dates. Id. She failed to show that the other individuals were in a similar situation, and the court affirmed summary judgment. Id. at 685. Lastly, the Middle District of Georgia granted summary judgment to an employer because the plaintiff could not show that the similarly situated person listed had a similar job, related characteristics or their indiscretions were similar to his own. Wehunt v. R.W. Page Corp., 352 F.Supp.2d 1342, 1352 (M.D. Ga. 2004). The court said that even if the plaintiff was able to point to individuals in a similar situation, the plaintiff produced no evidence that the individual received more favorable treatment. Id. at 1352.

This Court has already discussed that FRLCA did not breach its duty of fair representation because FRLCA followed proper grievance processes and USPS did not breach the National Agreement because the Plaintiff's dismissal was warranted. Union employees reviewing the grievance claim indicated that, the decision not to continue with the Plaintiff's claim, was due to the grievance's lack of merit and not his race. Dkt. 47, Ex. G, F. The declarations further show that the attorneys reviewing the Plaintiff's grievance claim had not met the Plaintiff and did not know his race. Dkt. 47, Ex. G, F. Plaintiff has provided no evidence in respect to FRLCA, other than mere conclusory statements, that FRLCA treated other similarly situated individuals more favorably.

Further, Plaintiff has failed to establish all of the requirements for a *prima facie* case in a § 1981 claim.

Even if the Plaintiff were to establish a *prima facie* case, the documentary evidence by FRLCA shows that FRLCA acted in a non-discriminatory fashion. FRLCA followed normal procedures and after numerous reviews decided not to take the case to arbitration. Since the Plaintiff has not offered evidence that would establish an issue of material fact, FRLCA prevails as a matter of law.

### III.    Title VII Claim Analysis

Similar to the analysis for a § 1981 claim, to prevail under a Title VII claim, a plaintiff must establish a *prima facie* case before proceeding. As with § 1981 claim, if a plaintiff can establish a *prima facie* case, USPS would have to offer a legitimate non-discriminatory reason for its actions. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). In order to establish a *prima facie* case, a plaintiff must show that he was a qualified member of a protected class, that he was subjected to adverse government action and that similarly situated employees outside of the protected class were treated more favorably. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).

Plaintiff cannot establish a *prima facie* case of discrimination because USPS had non-discriminatory reasons for the adverse employment action. As discussed above, USPS had just cause for terminating the Plaintiff. Plaintiff was inflating his COA forms to increase his salary during a mail count. USPS called into question his trustworthiness and his ability to be a reliable employee, eventually terminating him from his position. Dkt. 41, Ex. 3. Because USPS had legitimate reasons for terminating the Plaintiff's

19

employment and the Plaintiff has provided no evidence to refute these claims, the *prima facie* case fails.

Further, Plaintiff fails to establish a *prima facie* case because he cannot show that there were other similarly situated people outside the protected class who were treated differently. As discussed above, for a claim that bears a question of discrimination, the Plaintiff must show that similarly situated employees, not a part of the protected group, were treated differently. McDonnell, 411 U.S. at 793. This framework allows plaintiffs to prove their case when they do not have "explicit, inculpatory evidence of discriminatory intent." Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996) (citing Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776 (8th Cir. 1995)). Plaintiff must show that his employer treated similarly situated employees outside of the protected class more favorably than themselves. Holifield, 115 F.3d at 1562.

The Plaintiff has failed to provide evidence of similarly situated persons that were treated differently because of their race[4]. In Plaintiff's deposition, Plaintiff could not identify any employee who was similarly situated and was treated more favorably. Dkt. 41, Ex. 11. Plaintiff provided names of individuals, but admitted that he could not assert that they were in a similar situation to his or that they were treated more favorably. Dkt. 41 Ex. 11. Plaintiff supplemented his answer in a response to a Court order, but failed again to specify or give any information to infer that the individuals named were in a similar situation and treated differently. Dkt. 66. Plaintiff failed to properly name one of

---

[4] Because Plaintiff is Pro Se, this Court gave the Plaintiff an opportunity to provide evidence of any similarly situated individuals outside of his protected class that were treated differently after the defendants' individual summary judgment motions. This Court understands the importance of allowing everyone access to the courts and is required to liberally construe allegations and responses of pro se litigants. *See* Dkt. 63.

the individuals in the order.  Dkt. 66.  Because these, again, are conclusory statements
unsupported by any evidence that USPS racially discriminated against the Plaintiff,
Plaintiff could not establish this prong of the *prima facie* case.  Accordingly, it is

**ORDERED** that Defendants' Motions for Summary Judgment as to Plaintiff's
claims under § 1981 and the § 301-Hybrid Claim are **GRANTED**.  The Clerk of Court is
**directed** to enter judgment for the Defendants and against the Plaintiff and to close this
case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 13th day of
December, 2013.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All Parties and Counsel of Record.